UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| FRANK A. HAUENSCHILD, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | 04 C 7814 |
| ) | |
| CITY OF HARVEY, ILLINOIS, an Illinois ) | |
| municipal corporation, a body politic; ERIK ) | |
| KELLOGG, Mayor of the City of Harvey, Illinois; ) | |
| FRANK PIEKARSKI, JOSEPH WHITTINGTON, ) | |
| DARYL CRUDUP, THOMAS DANTZLER, ) | |
| DONALD NESBIT, RONALD WATERS, in their ) | |
| official capacities as members of the City of ) | |
| Harvey; and WILLIAM C. BELL, JR., Public ) | |
| Safety Fire Administrator, in his individual and in ) | |
| official capacity as an employee of the City of ) | |
| Harvey, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION

CHARLES P. KOCORAS, Chief District Judge:

This matter comes before the court on the motion of Defendants Erik Kellogg, Frank Piekarski, Joseph Wittington, Daryl Crudup, Thomas Dantzler, Donald Nesbit, Ronald Waters, William Bell, and the City of Harvey (collectively referred to as the "Defendants") to dismiss Counts I-III of the complaint of Plaintiff Frank Hauenschild

pursuant to Fed. R. Civ. P. 12(b)(6). For the reasons set forth below, the motion is denied.

## BACKGROUND

Because this case comes to us in the context of a motion to dismiss, we take all well-pleaded facts alleged in the complaint as true. Conley v. Gibson, 355 U.S. 41, 45-46 (1957). Hauenschild served on the Harvey Fire Department from 1977 until early 2004. For his last 12 years as a firefighter, he held the rank of captain and served as shift commander. In those positions, he was responsible for management tasks such as scheduling and supervising firefighters who served during his shift, as well as responding to fire calls. Until December 2003, Hauenschild had a consistent shift of 24 hours on duty followed by 48 hours off duty, referred to as a 24/48 shift. This atypical (by conventional employment standards) schedule allowed him to obtain a law degree and thereafter to become a practicing attorney while maintaining his job as a firefighter.

Defendant Bell is also a veteran of the department, enjoying a 20-year tenure and attaining the rank of Fire Chief prior to his retirement in 1996. Upon his departure, Bell began receiving pension benefits from the department.

In May 2003, Defendant Kellogg was elected mayor of Harvey.[1] Shortly thereafter, he appointed Bell to serve as the Public Safety Fire Administrator. According to the complaint, the position did not exist before Kellogg took office, and the duties and trappings of the position were indistinguishable from those of the Fire Chief's office. Hauenschild alleges that Bell's assumption of the office of the Administrator was virtually contemporaneous with Kellogg's election even though the position was not officially created until August 2003.

At the time of Bell's appointment, Hauenschild was a member of the Board for the Harvey Firefighters Pension Fund. Its president was another firefighter named Richard Stockwell. When Bell began serving as administrator in approximately May 2003, Stockwell terminated Bell's pension payments, apparently concluding that Bell had reentered active service in the department. According to Stockwell's interpretation of 40 ILCS § 5/4-117(a),[2] Bell's receipt of the administrator's salary barred his continued collection of retirement benefits.

---

[1] The balance of the individually named Defendants are members of the Harvey City Council.

[2] In pertinent part, the statute provides that "[i]f a firefighter receiving pension payments reenters active service, pension payments shall be suspended while he or she is in service."

It appears from the complaint that Stockwell's unilateral decision as board president was appealable to the board as a whole. Bell sought this review in October 2003; in the meantime, Hauenschild had been elected to replace Stockwell as president of the board. The seven-member board heard Bell's appeal on or around December 1, 2003, and voted four to three in support of the earlier decision to discontinue Bell's retirement benefits. Hauenschild was one of the four who agreed with Stockwell's initial determination.

According to Hauenschild, the day after the hearing, Bell rescinded the yearly schedule that Hauenschild and the other two shift commanders had prepared for the department's staffing for 2004. The day after that, Bell removed him from the 24/48 shift and instead required him to work five eight-hour shifts per week, Monday through Friday. He was moved into an office that had been converted from a storage room, located in an area for which he was not given keys. He was divested of his position as shift commander, thus terminating his supervisory duties. He was no longer permitted to respond to fire calls. His sole duty was to update the department's policy manual, a task that had not been attended to for 20 years.

Hauenschild's new schedule adversely impacted his legal practice, so he requested that Bell restore him to his previously occupied shift. After Bell refused, Hauenschild sent a letter to each of the individual Defendants, detailing Bell's actions

and alleging that he had so acted to retaliate against Hauenschild for voting not to reinstate his pension benefits. Hauenschild's circumstances did not change, and in early January 2004 he resigned from the department.

Approximately one year later, Hauenschild filed suit. The four-count complaint alleged First Amendment retaliation, deprivation of a property right in contravention of the Fourteenth Amendment, conspiracy to violate Hauenschild's constitutional rights, and a state-law claim for wrongful termination. Defendants moved to dismiss the complaint in its entirety for failure to state a claim pursuant to Fed. R. Civ. Proc. 12(b)(6).

## LEGAL STANDARD

When considering a 12(b)(6) motion to dismiss, a court evaluates the legal sufficiency of a plaintiff's complaint, not the merits. Gibson v. City of Chicago, 910 F.2d 1510, 1520 (7th Cir. 1990). We must accept all well-pleaded allegations as true and will not dismiss a case for failure to state a claim unless the plaintiff cannot prove any facts sufficient to support his claim. Conley, 355 U.S. at 45-46. All inferences are to be drawn in a light most favorable to the plaintiff. Jackson v. E.J. Branch Corp., 176 F.3d 971, 978 (7th Cir. 1999). To survive a motion to dismiss, a plaintiff need only provide a "short and plain statement" under Rule 8(a)(2); the particulars of the claim are not required. Midwest Gas Servs. v. Ind. Gas. Co., 317 F.3d 703, 710 (7th Cir.

2002). Nonetheless, to withstand a motion to dismiss, a complaint must allege facts that set forth the essential elements of the cause of action. Doherty v. City of Chicago, 75 F.3d 318, 326 (7th Cir. 1996). With these principles in mind, we consider the instant motion.

## DISCUSSION

As an initial matter, we note that Hauenschild acknowledged in his response that Count IV, a claim for wrongful discharge under Illinois law, is not viable. He also concedes that he cannot pursue any damage claims against the individual Defendants in their official capacities. Finally, he disavows any intention of seeking punitive damages against the City or the individual Defendants in their official capacity. His request that he be permitted to file an amended complaint incorporating these changes is granted, and we turn our full attention to the contested counts.

**A. Count I: First Amendment Retaliation**

To state a cognizable claim for infringement of First Amendment rights by a government employer, a public employee such as Hauenschild must allege that he engaged in constitutionally protected speech and that the speech was a substantial or motivating factor behind the employer's actions against him. See Carreon v. Illinois Dep't of Human Servs., 395 F.3d 786, 791 (7th Cir. 2005). Because government employers have greater latitude in regulating their employees' speech than they would

in regulating the speech of private citizens, the first element triggers a separate three-part analysis. See Bonds v. Milwaukee County, 207 F.3d 969, 976 (7th Cir. 2000); Dishnow v. Sch. Dist. of Rib Lake, 77 F.3d 194, 197 (7th Cir. 1996). First, the speech in question must be the type that would be protected if it originated from someone who was not a public employee. See Dishnow, 77 F.3d at 197. Second, the speech must involve a matter of public concern, not merely a personal grievance or dispute. See id. Moreover, the plaintiff must speak as a concerned citizen, rather than as a representative of the public employer or pursuant to the routine duties of his or her job. See Gonzalez v. City of Chicago, 239 F.3d 939, 941 (7th Cir. 2001); Bonds, 207 F.3d at 980; Youker v. Schoenenberger, 22 F.3d 163, 166-67 (7th Cir. 1994). The third step examines whether the employer's interest in controlling the speech outweighs the employee's interest in giving voice to the particular expression. See Pickering v. Board of Education, 391 U.S. 563, 568, 88 S. Ct. 1731, 1734-35 (1968).

The sole basis for Defendants' 12(b)(6) challenge to Count I focuses on whether Hauenschild's speech involved a matter of public concern. To determine whether speech addresses a matter of public concern, a court must look to the content, form, and context of the speech, paying particular attention to content. See Connick v. Myers, 461 U.S. 138, 147 (1983); Delgado v. Jones, 282 F.3d 511, 517 (7th Cir. 2002). According to Defendants, the content of Hauenschild's speech was a simple "no" vote,

it took the form of an execution of his duty as a board member to decide pension disputes, and the context was nothing but an employment decision on the personal grievance of Bell. They contend that it is a private matter, of the sort that has been deemed by the case law to not constitute a matter of public concern. See, e.g., Gonzalez, 239 F.3d at 941; Snider v. Belvidere Township, 216 F.3d 616, 620 (7th Cir. 2000). Relying particularly upon Gonzalez, they aver that the vote was nothing but a routine execution of Hauenschild's duties as a board member, effectively removing any permissible characterization of the speech as a matter of public concern.

We are unpersuaded by Defendants' argument for several reasons. First, this case does not involve a private decision of a human resources department; rather, it centers upon a vote by a public body, charged with application of a statute governing the manner in which public funds will be spent. This is very much a matter of public concern. Relatedly, the context in which the speech allegedly arose is unusual, to say the least. Given the involvement of the mayor and the city council members with the decision at issue, we cannot share Defendants' position that the matter could be nothing but a private employment dispute. Third, the allegations of Count I are not limited to Bell or Hauenschild's vote; they encompass all the individual Defendants and the letter that Hauenschild wrote to them describing Bell's actions. In the unique circumstance described by the complaint, it is conceivable that this communication would fall within

the realm of public concern. At this stage of the litigation, and because we know next to nothing about the letter's contents or form, making any decision about the legal significance of this correspondence is exceedingly difficult. Lastly, we emphasize that this matter comes to us on a motion to dismiss for failure to state a claim upon which relief can be granted. Having reviewed the contents of the complaint as a whole, it is not apparent that Hauenschild will be unable to prove a set of facts that would entitle him to relief. Of course, this does not represent a conclusion that the converse is true, i.e., that he will be able to ultimately prevail on his claim of First Amendment retaliation. It is simply too early in the proceeding to make such a definitive determination.

## B. Conspiracy to Violate Constitutional Rights

Count II of the complaint contends that the Defendants conspired to deprive Hauenschild of his property right in his employment with the department in violation of the Fourteenth Amendment. Defendants correctly note that the complaint does not specify whether Hauenschild is basing his claim in 42 U.S.C. § 1983 or 42 U.S.C. § 1985(3). However, because the complaint contains no allegation that alludes to any animus by the Defendants on grounds of race or other constitutionally protected class, relief under § 1985(3) would be unavailable. See Bray v. Alexandria Women's Health Clinic, 506 U.S. 263, 268-74, 113 S. Ct. 753, 759-62 (1993); Griffin v. Breckenridge,

403 U.S. 88, 102, 91 S. Ct. 1790, 1798 (U.S. 1971). Thus, we examine only the viability of a conspiracy claim founded on § 1983.

In the § 1983 context, a viable claim for conspiracy must allege that a state official and a private party agreed to deprive the plaintiff of constitutional rights and that the private party willfully participated in concerted activity with the state actors. Fries v. Helsper, 146 F.3d 452, 457 (7th Cir. 1998). Defendants charge that Count II is infirm because the conspiracy alleged consists solely of persons working for the City, a municipal corporation. They correctly note that a corporation cannot conspire with itself, thus preventing Hauenschild from properly alleging the first aspect of a legally cognizable claim. However, Hauenschild points out that, when a public official acts solely out of personal motivation, that person acts outside the scope of his or her employment with the government and in effect is transformed into a private party. Hartman v. Bd. of Trustees, 4 F.3d 465, 470 (7th Cir. 1993). Because the contents of the complaint reasonably allow an inference that Bell acted not to further the interests of the City but only to serve his own ends, the allegations of Count II, under a particular set of facts, could provide Hauenschild with relief. Thus, he must be given the opportunity to pursue his claim beyond the pleading stage.

## C. Unconstitutional Deprivation of a Property Right

Count III alleges that Hauenschild possessed a property interest in his job with the department and that Defendants, acting under color of state law, wrongfully deprived him of that right in violation of the Fourteenth Amendment by creating or contributing to a situation that amounted a constructive discharge. Drastically altering an employee's duties or position can support a claim for constructive discharge. See, e.g., Levenstein v. Salafsky, 164 F.3d 345, 351 (7th Cir. 1998) (concluding that an employer had constructively discharged a physician by preventing him from seeing patients and relegating him to a basement office to review old medical training videos); Parrat v. City of Connersville, 737 F.2d 690, 694 (7th Cir. 1984) (finding constructive discharge when a 25-year police veteran was demoted and placed in a windowless room with no duties). In this case, Hauenschild alleges several of the Defendants' actions created such an intolerable working environment that he had no alternative but to resign his post. His usual 24/48 shift was switched to an 8-hour, 5-day-per-week shift. His title of shift commander and all accompanying authority as well as his participation in responding to fire calls were removed. Finally, he was assigned to work in a windowless, converted storage room without an operating phone or the ability to access the room without going through another department employee. When

read in the light most favorable to Hauenschild, Count III states a cognizable claim. See Wozniak v. Conry, 236 F.3d 888, 889-90 (7th Cir. 2001).

**D. Qualified Immunity**

As an alternative ground for dismissal of Counts I and III, Defendants assert that they are entitled to qualified immunity from Hauenschild's claims. Public officials performing discretionary functions are generally entitled to qualified immunity from civil suit if their actions do not violate clearly established statutory or constitutional rights of which a reasonable official would have been aware. Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). There is no entitlement to qualified immunity if the plaintiff sufficiently alleges facts that establish a constitutional violation and demonstrate the constitutional right at issue was clearly established when the violation occurred. Saucier v. Katz, 533 U.S. 194, 201, 121 S. Ct. 2151, 2156 (2001). The question of the application of qualified immunity should be addressed at the earliest possible point to effectuate its underlying purpose of protecting public officials from litigation rather than just from ultimate liability. Saucier, 533 U.S. at 200-01, 121 S. Ct. at 2156. However, that point is seldom found at the motion to dismiss stage, as § 1983 plaintiffs are not required to plead facts that would indicate that immunity is not available. See Alvarado v. Litscher, 267 F.3d 648, 651-52 (7th Cir. 2001). Because, as discussed above, we cannot definitively categorize the nature of Hauenschild's speech without

knowing facts that are not included in the complaint, the request for dismissal premised on this affirmative defense is premature.

## CONCLUSION

Based on the foregoing analysis, Defendants' motion to dismiss the complaint is denied. Hauenschild is given until May 19, 2005, to amend the complaint in accordance with the contents of this opinion.

Charles P. Kocoras
Chief Judge
United States District Court

Dated:   May 12, 2005