UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| FRANK A. HAUENSCHILD, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) |
| CITY OF HARVEY, ILLINOIS, an Illinois | ) |
| municipal corporation, a body politic; ERIK | ) |
| KELLOGG, Mayor of the City of Harvey, Illinois; | )   04 C 7814 |
| FRANK PIEKARSKI, JOSEPH WHITTINGTON, | ) |
| DARYL CRUDUP, THOMAS DANTZLER, | ) |
| DONALD NESBIT, RONALD WATERS, in their | ) |
| official capacities as members of the City of | ) |
| Harvey; and WILLIAM C. BELL, JR., Public | ) |
| Safety Fire Administrator, in his individual and in | ) |
| official capacity as an employee of the City of Harvey, | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM OPINION**

CHARLES P. KOCORAS, District Judge:

This matter comes before this Court on two motions for summary judgment: the first filed by Defendants the City of Harvey (the "City"), Harvey Mayor Eric Kellogg ("Mayor Kellogg"), and Harvey City Councilmen Frank Peikarski, Joseph Whittington, Daryl Crudup, Thomas Dantzler, Donald Nesbit and Ronald Waters ("the City Council"), and the second filed by Defendant Harvey Public Fire Safety Administrator Frank Bell ("Bell"). Because the two motions involve the same issues, we address

them together. For the following reasons, summary judgment is denied as to the City, Bell, and Mayor Kellogg, and granted as to the City Council.

## **BACKGROUND**

Plaintiff Frank Hauenschild ("Hauenschild") was employed as a firefighter by the City of Harvey from 1977 until his resignation on January 2, 2004. At the time he retired, Hauenschild had been a captain for 12 years. In addition, Hauenschild passed the bar exam in 1988 and is an attorney with an active law practice.

While employed by the City, Hauenschild began serving as a member of the City of Harvey Firefighters' Pension Board ("Pension Board"), and in June 2003, he was elected as its President. The Pension Board administers a system of retirement benefits for Harvey firefighters through the Harvey Firefighters' Pension Fund ("Pension Fund"). The Illinois Firefighters' Pension Code prohibits a firefighter from receiving pension benefits while in active service with the same fire department from which s/he retired.

In the spring of 2003, Eric Kellogg was elected Mayor of Harvey, and upon taking office, appointed Frank Bell as the Public Safety Fire Administrator. Bell, a former Harvey firefighter, had been receiving benefits from the Pension Fund since his retirement in 1996. Mayor Kellogg told Bell that, based on other towns' experience, his appointment would not prevent Bell from continuing to receive pension benefits. However, when Bell was appointed, his pension benefits were suspended. Bell

appealed to the Pension Board, and at a hearing on December 2, 2003, the Pension Board voted 4-3 against reinstatement of Bell's pension benefits. Hauenschild was one of the members who voted against reinstatement.

At the hearing, Mayor Kellogg was adamant that Bell's pension should not be suspended and that the Fund's ultimate decision was unfair. The Mayor demanded to know who had contacted the Pension Fund's attorney to inform him that a hearing was taking place, and Hauenschild admitted that he had done so. In his deposition, Mayor Kellogg described the hearing as a "kangaroo court" and testified that he felt that race played a role in the Pension Board's decision.

Only a day or so after the Board voted not to reinstate Bell's pension benefits, Bell altered Hauenschild's work schedule. Bell had the duty to assign Fire Department personnel to different shifts, and Mayor Kellogg had given Bell latitude to run the day-to-day operations of the Department. Prior to the hearing, Bell had approved a 2004 manpower schedule that included Hauenschild's assignment to the "Black Shift" on a 24/48 rotation. Immediately after the hearing, Bell rescinded that schedule and placed Hauenschild on a schedule of working eight-hour days, Monday through Friday. Although Hauenschild retained his title as Captain, his duties were changed entirely; he was removed from the duty of responding to emergency calls, was not assigned a department vehicle, and was not given keys to an office. Hauenschild's only assigned task was to update the Fire Department's policy and procedure manual.

Hauenschild was eventually provided a place to work - the former Deputy Chief's office - which had no working telephone and had previously been used for storage. Bell eventually ordered storage materials to be removed from the office, and when Hauenschild complained, ordered that Hauenschild be given a printer for the computer in the office. Although he assigned Hauenschild the task of updating the manual, Bell did not provide a disk copy. When Hauenschild tendered to Bell his suggested revisions to the policy and procedures manual, as directed, Bell neither reviewed them nor offered feedback.

Hauenschild requested that Bell return him to his old shift and prior position of authority in the department. Bell did not alter Hauenschild's shift or position.

On December 19, 2003, Hauenschild's attorney sent a letter to the Mayor, Bell, and the City Council complaining about the change in Hauenschild's duties and asserting that Bell had retaliated against Hauenschild for his exercise of his First Amendment rights. Mayor Kellogg spoke to Bell about the letter, and although Kellogg remembered speaking to others about the letter, he could not recall with whom he spoke. Prior to January 2, 2004, neither the Mayor nor the members of the City Council responded to Hauenschild's letter.

On January 2, 2004, Mayor Kellogg sent a letter to Hauenschild's attorney, denying that there was any retaliatory motive for the change in Hauenschild's duties,

and requesting a meeting to resolve the issues. The same day, Hauenschild resigned. The parties dispute whether or not a meeting was ever ultimately scheduled.

Hauenschild filed this suit against Mayor Kellogg, the City Council, and Bell, all in their individual capacities, as well as the City of Harvey itself. Hauenschild alleges that Defendants have violated his constitutional rights by demoting him, reassigning him, and constructively discharging him, all in retaliation for his vote as a member of the Pension Board to deny Defendant Bell's pension benefits. Initially, we denied Defendants' motion to dismiss, holding that the allegations of Hauenschild's complaint were sufficient to state a claim for First Amendment retaliation, a § 1983 conspiracy claim, and a due process claim for unconstitutional deprivation of property. Defendants now move for summary judgment on all counts.

## LEGAL STANDARD

Summary judgment is appropriate only when "the pleadings, depositions, answers to interrogatories, admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the burden of demonstrating the absence of a genuine issue of material fact by specific citation to the record, at which time the burden shifts to the non-moving party to set forth specific facts showing that there is a genuine issue of fact for trial. Fed. R. Civ. P. 56(e); *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). At summary judgment,

we construe all facts and draw all inferences from the record in favor of the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

## DISCUSSION

Hauenschild's claims are premised on 42 U.S.C. § 1983, which provides that "[e]very person who, under color of statute, ordinance, regulation, custom, or usage, of any State...subjects, or causes to be subjected, any citizen of the United States...to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law." Defendants have moved for summary judgment on all of Hauenschild's claims: Count I, which asserts a claim of retaliation for exercise of First Amendment rights, Count II, which asserts a conspiracy among all defendants to violate Hauenschild's First Amendment and property rights, and Count III, which asserts a claim for constructive discharge amounting to an unconstitutional deprivation of property. In this opinion, we address first the viability of each of Hauenschild's claims and then discuss the potential for liability of each of the Defendants.

I.     First Amendment Retaliation Claim

The First Amendment protects citizens, including public employees, from retaliation by the government based upon their speech. *Massey v. Johnson,* 457 F.3d 711, 716 (7th Cir. 2006). To pursue a claim of First Amendment retaliation, a public employee must show that: "(1) his speech was constitutionally protected, (2) he

suffered a deprivation likely to deter free speech, and (3) his speech was at least a motivating factor in the employer's action." *Id.*

Defendants contest only the second and third elements of Hauenschild's claim, asserting first that he has not shown that he suffered a "deprivation" when his job assignments were changed, and second, that it was Hauenschild's skills as an attorney, rather than Hauenschild's vote on the Pension Board, that motivated his new assignment to update the policy manual.

Although Defendants assume that Hauenschild's actions deserve First Amendment protection, we will address this first and fundamental step in the interests of clarity. When we denied Defendants' Motion to Dismiss, we held that Hauenschild's allegations were sufficient to state a potential First Amendment claim based upon both Hauenschild's vote and his letter to the Mayor and City Council. First, we held Hauenschild's vote on the Pension Board involved a matter of public concern, up for a vote by a public body charged with the application of a statute governing the manner in which public funds are spent, and thus could be entitled to First Amendment protection. Defendants have offered no evidence or argument concerning Hauenschild's status as an employee or role on the Pension Board that would cause us to reconsider that ruling. Second, we held that Hauenschild's letter to the Mayor and City Council could also be the basis for a First Amendment claim. However, the developed facts make clear that the letter was not written by Hauenschild, but instead

was written by his attorney, and so cannot be the basis for a First Amendment claim. Therefore, we examine only retaliation allegedly taken against Hauenschild on the basis of his "no" vote on the Pension Board.

Defendants first argue that Hauenschild's change of duties did not amount to a "deprivation" likely to deter free speech and thus is not actionable under § 1983. A plaintiff need not put forward evidence of a termination or evidence qualifying as an "adverse employment action" under Title VII in order to succeed on a First Amendment retaliation claim; instead, "[a]ny deprivation under color of law that is likely to deter the exercise of free speech is actionable." *Mosely v. Board of Educ. of City of Chicago,* 434 F.3d 527, 533-34 (7th Cir. 2006) (quoting *Power v. Summers*, 226 F.3d 815, 820 (7th Cir. 2000)). Undisputed facts demonstrate that Hauenschild was stripped of the majority of his responsibilities and removed from active service as a firefighter, lost privileges associated with his prior position, and was assigned an office formerly used for storage without a telephone or a printer, all within a day or two of his vote against Bell. Hauenschild has offered sufficient evidence, at this point, from which a reasonable jury could conclude that the severity of the actions taken against him, almost immediately after his vote, were likely to deter protected speech.

Hauenschild has proffered sufficient evidence, as discussed above, that a jury could conclude that his protected speech was a "substantial" or "motivating factor" in the actions taken against him. *Massey*, 457 F.3d at 716-17. The burden now shifts to

Defendants to produce evidence that Hauenschild's speech was not the "but-for" reason for his termination. *Id.* Defendants claim that Hauenschild's skills as an attorney and the needs of the Fire Department motivated the actions taken towards him. Hauenschild counters Defendants' explanation by noting that his only job assignment was revisions to an administrative manual, which, once completed, Bell never reviewed. There exists a genuine dispute of fact concerning both the effect of Hauenschild's reassignment and Defendants' proffered reasons for it. Accordingly, summary judgment is inappropriate on Hauenschild's claim of First Amendment retaliation.

## II.    Conspiracy Claim

Defendants assert that Hauenschild's allegations amount to little more than vague, conclusory speculation that they conspired to deprive him of his First Amendment rights as well as the property right he had in his employment.

As an initial matter, although neither party has raised the issue, the source of Hauenschild's property right has not yet been identified. Hauenschild cites the Constitution as the source of his property right, but as the Seventh Circuit has repeatedly held, property interests are not created by the Constitution. *See, e.g., Deen v. Darosa*, 414 F.3d 731, 734 (7th Cir. 2005). Instead, a protectible property interest must be grounded in independent state law, regulation, municipal ordinances, or express or implied contracts. *Allen v. Martin*, 460 F.3d 939, 946 (7th Cir. 2006).

Absent proof one way or the other concerning Hauenschild's property interest in his job, we will assume, for the purposes of this motion only, that such an interest exists.[1]

Defendants argue that Hauenschild has presented no evidence of any act or agreement in furtherance of a conspiracy.[2]  In order to survive summary judgment on his claim that Defendants conspired to deny Hauenschild his First Amendment rights, Hauenschild must show: (1) the existence of an overt agreement; (2) if there is no evidence of overt agreement, evidence of alleged acts "sufficient to raise the inference of mutual understanding" (*i.e.*, the acts of the alleged conspirators "are unlikely to have been undertaken without an agreement"); and (3) "a whiff of the alleged conspirators' assent." *Amundsen v. Chicago Park Dist.*, 218 F.3d 712, 718 (7th Cir. 2000).  Vague, conclusory allegations without evidence of overt acts "reasonably related" to the

---

[1]By statute, Illinois grants firefighters a protectible property interest in their continued employment. 65 ILCS 5/10-2.1-17; *Ertl v. City of De Kalb*, 708 N.E.2d 574, 576 (Ill. App. Ct. 1999).  However, home rule municipalities may enact ordinances that conflict with the Illinois code. 65 ILCS 5/10-2.1-29; *Stryker v. Village of Oak Park*, 343 N.E.2d 919, 923 (Ill. 1976).  Harvey is a home rule municipality, *Sampson v. Graves*, 711 N.E.2d 1118, 1120 (Ill. App. Ct. 1999), but neither party has proffered any evidence that this statute applies to the City or that the City has enacted any municipal ordinance concerning the property interests of its firefighters in their jobs.

[2]In our decision on Defendants' motion to dismiss, we held that a public official acting solely out of personal motivation is acting outside the scope of his employment with the government and is transformed into a private party, thus permitting a § 1983 claim of conspiracy to proceed even though all alleged participants are persons working for the City of Harvey, a municipal corporation.  Defendants do not address the degree to which Bell acted out of personal animus or acted in furtherance of the need of the Fire Department.

promotion of the alleged conspiracy are not sufficient to survive summary judgment. *Id.*

As to the City Council, Hauenschild has proffered no evidence of any overt agreement with Bell. Hauenschild has offered nothing more than a complaint that he received no answer to his letter for two weeks as evidence of a conspiracy between the City Council, and Bell. A slow response to a letter, especially over the holiday season, is hardly the type of act which is "unlikely to have been taken without an agreement." *See id.* Accordingly, there is no evidence that the City Council took part in any alleged conspiracy.

As to the Mayor, Hauenschild points not only to the slow response to his letter but also to evidence that the Mayor had previously assured Bell that he would get his pension benefits, that he denounced the Pension Board hearing as a "kangaroo court," and that he believed the decision was racially motivated. The circumstantial evidence surrounding the Mayor's involvement in Bell's pension dispute is enough that a reasonable jury could infer that the Mayor was involved. *Alexander v. City of South Bend*, 433 F.3d 550, 557 (7th Cir. 2006). Hauenschild has presented the requisite "whiff" of conspiracy as between the Mayor and Bell, and so we may grant summary judgment only as to the City Council on Count II of Hauenschild's complaint.

III.    Constructive Discharge

Hauenschild has also asserted a separate claim for constructive discharge.[3]  The

Seventh Circuit has recognized that "constructive discharge" may be asserted in

connection with a claim for deprivation of property rights under the due process clause.

*Levenstein v. Salafsky*, 414 F.3d 767, 774 (7th Cir. 2005).  In order to establish a claim

for constructive discharge, a plaintiff must prove both "harassing behavior sufficiently

severe or pervasive to alter the conditions of her employment, and that 'the abusive

working environment became so intolerable that her resignation qualified as a fitting

response.'" Id. at 774 (citing *Pennsylvania State Police v. Suders*, 542 U.S. 129

(2004)).  As discussed in detail in the preceding section, that a reasonable jury could

conclude that the changes in Hauenschild's working conditions were "severe or

pervasive." *See Parrett v. City of Connersville*, 737 F.2d 690 (7th Cir. 1984) (chief of

detectives demoted and kept in "enforced idleness").

Defendants also argue that Hauenschild's resignation, after enduring only a

month of his new schedule, prevents him as a matter of law from asserting a

---

[3]Although Hauenschild does not specify the basis of this claim, we assume he
raises it in connection with his § 1983 claim rather than under Illinois law, as the
Illinois Supreme Court has repeatedly made clear that Illinois does not recognize a
cause of action for constructive discharge in retaliatory discharge cases. *E.g. Metzger
v. DaRosa*, 805 N.E.2d 1165, 1173 (Ill. 2004) (noting that "this court has consistently
sought to restrict the common law tort of retaliatory discharge" and has "never
recognized a common law tort for any injury short of actual discharge."); *Thomas v.
Guardsmark, Inc.*, 381 F.3d 701, 707 (7th Cir. 2004) (collecting cases).

constructive discharge claim because he did not give his employer time to rectify the problem. In support, Defendants rely on *Cooper-Schut v. Visteon Automotive Systems*, 361 F.3d 421 (7th Cir. 2004) and *Ulichny v. Merton Community Sch. Dist.*, 249 F.3d 686 (7th Cir. 2001). Both *Cooper-Schut* and *Ulichny* are clearly distinguishable on their facts. First, in *Ulichny*, the plaintiff was not stripped of all her duties, and her assignments, though greatly reduced, were not "totally unexpected" of teachers and administrators. 249 F.3d at 703-4. Given these circumstances, as well as the plaintiff's refusal of an invitation to participate in the process of restructuring her duties, the Seventh Circuit found her unwillingness to remain in her job to bar her claim of constructive discharge. *Id.* In contrast, Hauenschild has proffered evidence of a dramatic change in his responsibilities: a captain in the fire department stripped of his authority and no longer permitted to respond to fire calls, but instead charged solely with editing an administrative policy manual. *Cooper-Schut* is equally as distinguishable, because in that case, the plaintiff quit despite the fact that his employer was conducting an immediate inquiry into his claims and taking affirmative steps to address the situation. 361 F.3d at 429. In Hauenschild's case, even though Hauenschild complained to all defendants, neither Bell, nor the City Council, nor the Mayor, responded immediately or indicated any intent to conduct an investigation. On these facts, the time span between Hauenschild's change in duties and his resignation

are not an automatic bar to his claim; instead, a reasonable jury could decide that his resignation qualified as a "fitting response" to his working conditions.

IV.    Defendants' Potential Liability Under Count I

Hauenschild seeks to hold the City of Harvey, Bell, the Mayor, and the City Council liable for retaliating against him after his vote against reinstating Bell's pension benefits.  We address the potential legal liability of each separately.

A.    City of Harvey

Under 42 U.S.C. § 1983, a municipality may be held liable for depriving an individual of his constitutional rights if the deprivation was caused by municipal policy or custom.  *Rasche v. Village of Beecher*, 336 F.3d 588, 597 (7th Cir. 2003). Municipal policy or custom may take any of three forms: (1) an express policy, (2) a widespread practice so well settled as to constitute custom or usage with the force of law, or (3) an allegation that the constitutional injury was caused by an official with final policymaking authority.  *Id.*  The only type of municipal action at issue in this case is action by Bell, Mayor Kellogg, and the City Council.  In order for the City to be held liable for these individuals' actions, their actions must either have been: (1) those of a final policymaker; or (2) ratified by a final policymaker.  *Killinger v. Johnson*, 389 F.3d 765, 772 (7th Cir. 2004).

In determining which official has been delegated final policymaking authority, we look to state and local positive law, as well as custom and usage having the force

of law. *Rasche*, 336 F.3d at 600. An official's status as a final policymaker has been described in two different ways: either the official had the authority to adopt final rules or policy with respect to the challenged action, *Killinger*, 389 F.3d at 772, or he was the "apex" of authority with respect to the challenged action - that is, there was no higher authority that could stop him from taking that action, *Rasche*, 336 F.3d at 600. In determining which official is a "final policymaker," a court may examine whether, as a matter of custom, a municipal entity delegated its policy-making authority to an officer with respect to certain areas such that the officer was the "final authority." *Kujawski v. Board of Comm'rs of Bartholomew County, Indiana*, 183 F.3d 734, 739 (7th Cir. 1999).

There has been no argument that Mayor Kellogg or the City Council are not "final policymakers" for the City. However, there are significant factual issues still in dispute as to whether or not Bell was a "final policymaker."[4] Both parties proffer, as the primary support for their positions, diametrically opposed interpretations of the same city ordinance establishing Bell's position as Public Safety Fire Administrator. The ordinance provides as follows:

_____

[4]The determination of whether or not an individual is a final policymaker for the purposes of imposing municipal liability is a question of law which need not be decided now, but instead may be made at trial, before the case is submitted to the jury. *See Horwitz v. Board of Educ. of Avoca School Dist. No. 37,* 260 F.3d 602, 619 (7th Cir. 2001).

The Public Safety Fire Administrator shall be the Head Administrative Officer of the Fire Department and shall have sole, absolute control and command over all persons connected with the Fire Department. He shall possess full power and authority over its organization, government, and discipline and the direction and control of the Bureau of Fire Prevention and the Emergency Services Disaster Agency of the City and to that end he may prescribe and establish from time to time such rules and regulations as he may deem advisable, subject to the approval of the City Council.

Not surprisingly, Hauenschild emphasizes the total grant of power to the Administrator in the first sentence, while all Defendants emphasize the final clause of the last sentence, which limits the Administrator's power to establish rules and regulations concerning organization, government, and discipline by requiring the approval of the City Council.

On its face, the ordinance appears not to delegate final policy-making authority with respect to discipline and organization to Bell. Instead, Bell may make rules subject to the approval of the City Council. However, Hauenschild counters that the Mayor gave Bell the latitude to run the department as he saw fit - and while the Mayor asserts that a review board existed, there has been no evidence proffered that Bell's decisions in the area of discipline were ever brought to that board or that a formal review mechanism existed. No party has pointed to evidence that Bell, as a matter of course, never had his decisions appealed to or approved by the City Council, that a Review Board exists, or that any other provision of the Harvey Municipal Code or the very policy and procedure manual that is central to this dispute might inform this

Court's determination of the administrative framework surrounding the Harvey Fire Department. At this stage, the evidence of Bell's free rein in his department is not as overwhelming as that discussed in *Kujawski*, the case relied upon by Hauenschild. However, the evidence that Bell was merely executing policy set forth by a higher authority, such as the school principal discussed in *Brandt v. Bd. of Educ. of the City of Chicago*, 420 F. Supp. 2d 921 (N.D. Ill. 2006), the case relied upon by Defendants, is equally as weak. At this stage, we draw inferences in favor of the non-moving party, and as such, we cannot say at this time that Bell was not a final policymaker, such that the City may be liable for Bell's actions.

As we have concluded that the City could be liable under the "final policymaker" theory for the actions of the individual defendants, we decline to address Hauenschild's alternate "ratification" theory at this time.

B.      The Individual Defendants

Hauenschild has sued Bell, Mayor Kellogg, and the City Council in their individual capacities. Individual liability under § 1983 exists for any person who, under color of law, was "personally responsible for the deprivation of a constitutional right." *Johnson v. Snyder*, 444 F.3d 579, 583 (7th Cir. 2006)  To be personally responsible, an official "must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye." *Id.*  When a plaintiff seeks to hold an individual who was not directly involved liable, s/he must show that the defendant "acquiesced in

some demonstrable way in the alleged violation," *Palmer v. Marion County*, 327 F.3d 588, 594 (7th Cir. 2003), or that the defendant failed to act with a "deliberate and reckless disregard of the plaintiff's rights." *Fillmore v. Page*, 358 F.3d 496, 506 (7th Cir. 2004).

### 1.    The City Council

Hauenschild has not provided any evidence that the members of the City Council were directly involved in the alleged retaliation or that they conspired with Bell concerning those actions. While Hauenschild does argue that the City Council approved or ratified Bell's decision, he has provided no evidence of express approval. Furthermore, as we discussed in detail in connection with Hauenschild's conspiracy claim, there is insufficient evidence from which we could infer approval or participation by the City Council. The law is clear that mere inaction by municipal officials cannot serve as the basis for imposing § 1983 liability. *Wilson v. City of Chicago*, 6 F.3d 1233, 1240 (7th Cir. 1993). Usually, to be held liable for inaction, a municipality must be shown to have acted with deliberate indifference and reckless disregard - if any lower standard were to be imposed, § 1983 liability would be transformed into *respondeat superior* liability. *Cygnar v. City of Chicago*, 865 F.2d 827, 847 (7th Cir. 1989). The City Council's slow response to Hauenschild's letter is simply not enough to qualify as deliberate indifference. As Hauenschild has not

carried his burden of proof with respect to involvement of the City Council in any of the alleged actions, these defendants cannot be liable under § 1983.

2.     Mayor Kellogg

As discussed in relation to Hauenschild's conspiracy claim, sufficient evidence exists at this time from which a reasonable jury could conclude that the Mayor participated in the alleged actions.  Notwithstanding any alleged involvement, Mayor Kellogg asserts that he is protected by the doctrine of qualified immunity, which shields government officials from liability for civil damages so long as their conduct "does not violate clearly established constitutional rights of which a reasonable person would have known." *Doyle v. Camelot Care Centers, Inc*. 305 F.3d 603, 620 (7th Cir. 2002) (quoting *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)).  In order to avoid application of qualified immunity, a plaintiff must show that (1) the conduct at issue violates a constitutional right; and (2) that  right was 'clearly established' at the time of the alleged conduct." *Borello v. Allison*, 446 F.3d 742, 746 (7th Cir. 2006) (citations omitted).  To be "clearly established," the right in question must be:

> sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful; but it is to say that in the light of pre-existing law the unlawfulness must be apparent.

*Miller v. Jones*, 444 F.3d 929, 934 (7th Cir. 2006) (citing *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)).

Although Mayor Kellogg claims that he is entitled to qualified immunity, he presents no argument as to whether or not Hauenschild's First Amendment rights were "clearly established." Mayor Kellogg instead reiterates his earlier argument that mere inaction by a municipal official does not suffice to impose §1983 liability, and argues that, given that failure to act has repeatedly been held not to be a basis for § 1983 liability, he could not have known that his actions were unconstitutional. This argument simply ignores Hauenschild's allegations concerning his conspiracy with Bell. Mayor Kellogg does not argue that Hauenschild's right to comment on matters of public concern was at all unclear. If the Mayor has conspired to retaliate against Hauenschild for exercise of his First Amendment rights, or if he approved of Bell's decision to retaliate against Hauenschild, then whether these rights are clearly established or not is absolutely relevant.

The law is sufficiently clear that government employees have a First Amendment right to comment upon matters of public concern without fear of retaliation, whether that retaliation is in the form of a discharge, transfer. or harassment. *Id*. at 939. Furthermore, a public employee's speech concerning the potential misuse of public funds has been repeatedly held to be a matter of public concern. *Id*. As we previously concluded, the matter upon which Hauenschild spoke did not involve his interest in any

way, but instead involved the manner in which public funds would be applied. Furthermore, the actions taken by the Pension Board at a public meeting were not internal departmental actions. It is hard to believe that the public would not be interested in a retired firefighter being newly appointed "Fire Administrator" and by virtue of the technicalities of his appointment, still collecting a pension. Finally, Hauenschild's speech, a vote, has been recognized as a potentially viable ground for First Amendment protection by the Seventh Circuit in *Pleva v. Norquist*, 195 F.3d 905, 916 (7th Cir. 1999). The First Amendment protection for votes by municipal board members has also been described as within the "heartland" of the First Amendment and "beyond serious question" by the First Circuit in *Stella v. Kelley*, 63 F.3d 71, 76 (1st Cir.1995).

At this time, Hauenschild has produced sufficient evidence to survive summary judgment on the question of whether or not the Mayor's alleged conduct violated his First Amendment rights. As discussed above, the Mayor should have been aware that retaliation against a public employee for speaking out on a matter of public concern would be unconstitutional. Accordingly, we deny Mayor Kellogg summary judgment based upon a defense of qualified immunity.

3.	Bell

The undisputed facts show that Bell was personally involved in the alleged actions against Hauenschild.  Bell has not asserted a defense of qualified immunity. Accordingly, we deny summary judgment on all counts as to Bell.

## **CONCLUSION**

For the foregoing reasons, summary judgment is denied as to the City, Bell, and Mayor Kellogg, and granted as to the City Council.

_____
Charles P. Kocoras
United States District Judge


Dated:	December 7, 2006